## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEMETRIAS DAVIS, | C.A. No.: |
| Plaintiff, | **TRIAL BY JURY DEMANDED** |
| v. | |
| JP MORGAN CHASE & CO, a Delaware corporation, | **COMPLAINT** |
| Defendant. | |

1. Plaintiff Demetrias Davis is a resident of the State of Delaware residing at 278 E. Mt Vernon Street, Smyrna, Delaware, 19977.

2. Defendant JP Morgan Chase & Co. is a Delaware corporation whose registered agent for service of process is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

3. Defendant is an employer within the State of Delaware and within the jurisdictional coverage of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Family Medical and Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA"), Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA").

4. Jurisdiction is conferred on this Court by 42 U.S.C. § 12117(a), 29 U.S.C. § 2617(a)(2), 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1343, and 29 U.S.C. § 626.

5. Venue for all causes of action stated herein lies in the District of Delaware, as acts alleged as the bases for these claims took place within the boundaries of that District.

6. Plaintiff brings this action under the Americans with Disabilities Act, the Family and Medical Leave Act, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and

the Age Discrimination in Employment Act to redress the wrongs done to her by Defendant's discrimination against her on the basis of her disability, race, and age.

7. Plaintiff timely submitted a complaint of discrimination on the basis of disability, race, and age to the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC").

8. Plaintiff has received a Notice of Right to Sue for the above referenced charges from the EEOC.

9. Plaintiff has timely filed this complaint within ninety (90) days of her receipt of the aforementioned Notice of Right to Sue.

10. At all times relative to this Complaint, Plaintiff has had a "disability" as that term is defined by 42 U.S.C. § 12102(1). Specifically, Plaintiff has a physical impairment that substantially limits one or more of her major life activities, and/or she has had a record of such an impairment, and/or she has been regarded by Defendant as having such an impairment. Specifically, Plaintiff was born with one hand.

11. Despite Plaintiff's disability, she was, at all times relative to this Complaint, able to perform the essential functions of her job of Employment Customer Service Senior Specialist.

12. At all times relative to this Complaint, Plaintiff was an "eligible employee" as that term is defined by 29 U.S.C. § 2611(a)(2), in that she had been employed by Defendant for at least twelve (12) months and for at least 1,250 hours of service during the previous twelve months prior to her attempt to exercise her rights under the FMLA and/or her eligibility to exercise her rights under the FMLA.

13. Plaintiff is African American and is fifty-nine (59) years of age.

14. Defendant is liable for the actions of its agents as set forth in this complaint under the principles of agency, the doctrine of respondeat superior and pursuant to the ratification of the agents' actions by Defendant.

15. On or about July 30, 2014, Plaintiff was hired as a Human Resources Delivery Specialist III.

16. In or about 2018 Plaintiff's title was changed to Employment Customer Service Senior Specialist.

17. At all times relative to this complaint, Dawn M. Filandro ("Filandro"), Caucasian, was Defendant's Executive Director of Employment Customer Service.

18. At all times relative to this Complaint, Tin E. Salazar ("Salazar"), Caucasian, was a manager reporting to Filandro.

19. At all times relative to this Complaint, Carolyn Dozier ("Dozier"), African American, was an Employment Customer Service Senior Professional and reported to Salazar.

20. At all times relative to this Complaint, Cathi L. Conomon ("Conomon"), Caucasian, was a Human Resources Data Management Senior Specialist.

21. At all times relative to this Complaint, Lakia C. Martin ("Martin"), African American, was an Employment Customer Service Senior Specialist.

22. From the time of Plaintiff's hire on July 30, 2014, through approximately August 5, 2021, Andy M. Robinson ("Robinson"), Caucasian, was Defendant's Managing Director of Employment Customer Service.

23. Plaintiff's job consisted of gathering and redacting certain information from all written warning and termination documents needed to challenge an unemployment claim from all over the

country, I-9 verification, Code of Conduct investigations, and employee performance management.

24. In or about 2018, Plaintiff retuned to work after an injury.

25. Defendant assigned three co-workers to help Plaintiff complete her tasks but no co-workers were assigned to a younger coworker who worked the shift after Plaintiff.

26. Plaintiff filed an EEOC complaint complaining Defendant was singling her out in an attempt to make it appear that Plaintiff could not perform the job on her own even though she was capable.

27. Defendant removed the three helpers after Plaintiff complained and Plaintiff's production remained at 100%.

28. In or about 2018, Plaintiff filed a Code of Conduct complaint against Filandro for discrimination based on race that complained rules were being applied differently to African American employees and Caucasian employees.

29. After the Code of Conduct complaint was filed, all work except for the unemployment work was removed from Plaintiff.

30. In or about May 2019, Defendant instituted a requirement that employees log in to an AVAYA phone system to track attendance.

31. Two Caucasian employees, Deaneen Mullins and Joanne Dejong, complained about the procedure and were subsequently promoted to another team.

32. In or about October 2019, Martin informed Salazar that Employee Relations Representative Marnie Clark had informed her that her teams case flow was not affected by the AVAYA login and that the requirement was being implemented in an unfair manner.

33. In October 2019, Plaintiff again complained to Defendant regarding the unfair implementation and referenced her Code of Conduct complaint.

34. By December 2019, Plaintiff was the only case manager still required to log into the AVAYA system.

35. On or about August 8, 2019, Dozier informed Salazar via e-mail that Connie Hoopes ("Hoopes"), a female Caucasian, approached Dozier regarding the number of unemployment cases Plaintiff was processing per hour.

36. Dozier informed Salazar that Hoopes questioned whether Plaintiff had a mental disability.

37. In or about March 2020, Plaintiff worked from home on the unemployment queue as a result of the COVID-19 pandemic.

38. In or about April 2020, Ben Hopkins ("Hopkins") and Heather Clifton ("Clifton"), both younger Caucasians, were working the COVID cases.

39. In or about April 2020, Filandro directed Plaintiff to begin training Ben Hopkins ("Hopkins") and Heather Clifton ("Clifton"), both younger Caucasians, to work the unemployment queue.

40. In or about May 2020, at Defendant's request, Plaintiff stopped training Hopkins and Clifton.

41. In or about May 2020, Plaintiff began working the unemployment queue full time with Martin and Conomon.

42. In June 2020, Plaintiff was again directed to train Hopkins and Clifton on the unemployment queue.

43. Near the end of July 2020, Plaintiff and Martin were removed from the unemployment queue and placed in the COVID-19 triage queue on a fulltime basis.

44. Hopkins and Clifton began to work the unemployment queue.

45. Plaintiff was required to complete twenty cases per day, a metric that was later raised to 24 cases per day.

46. The difference in the type of work between the unemployment queue and the COVID-19 triage queue made it impossible for Plaintiff to meet production quotas with her disability.

47. Plaintiff took approved FMLA leave from on or about August 10, 2020, through November 2, 2020, due to stress, depression and anxiety suffered as a result of the forced transition to an area that was much more difficult to perform due to her disability.

48. Upon return from FMLA leave, Plaintiff presented a letter to Defendant from her psychiatrist, Dr. Meriam Chua, asking that Plaintiff be returned to her old job or that Plaintiff be given a longer time period to complete her COVID-19 related work.

49. Plaintiff e-mailed Robin Leopold ("Leopold") and Jeannie M. Carlucci-McDonnell ("Carlucci-McDonnell") in Health Services for an ADA accommodation related to her disability.

50. Plaintiff was unable to make the required quota of 24 cases per day due to her disability.

51. Defendant would display all coworker's numbers on a board showing everyone's progress.

52. Plaintiff suffered embarrassment and anxiety because she was unable to produce at the same rate as non-disabled employees.

53. On or about November 16, 2020, Dr. Chua reemphasized a recommendation of an ADA accommodation for Plaintiff of returning to her previous position, or that Plaintiff be given a longer time period to complete tasks due to a typing limitation related to her disability.

54. Plaintiff received an unfavorable 2020 year-end review.

55. Plaintiff challenged the year-end review as containing false information and being unfair as the poor review was related to her approved FMLA absence from August 10, 2020, through November 2, 2020.

56. On or about February 11, 2021, Plaintiff was placed on a Performance Development Plan which led to a written warning.

57. On March 11, 2021, Martin was reinstated into her prior position as an Unemployment Claim Case Manager.

58. Despite Plaintiff's request for an accommodation to return to her previous position as an Unemployment Claim Case Manager, Plaintiff was denied the same opportunity to assist in working the HRSD Support Team queue on a daily basis.

59. Plaintiff was not made aware of any opportunity to be reinstated back into her prior position as an Unemployment Claim Case Manager.

60. During the period of her employment, Plaintiff was subjected to differential treatment by Defendant on the basis of her disability, her race, and her age and suffered retaliation for taking approved FMLA leave.

61. The wrongful acts committed by the Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

62. As a direct result of the actions of the Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, and humiliation.

## COUNT I – THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12117 *et seq.*

63. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 62 hereinabove.

64. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

65. By committing the aforementioned acts, Defendant has discriminated against Plaintiff on the basis of her disability in violation of 42 U.S.C. § 12117 *et seq.*

66. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT II – THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601 *et seq.*

67. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 66 hereinabove.

68. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

69. By committing the aforementioned acts, Defendant has wrongfully interfered with, restrained, and denied Plaintiff's exercise of her rights under the FMLA and has retaliated against Plaintiff for her intended exercise of her rights under the FMLA.

70. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered lost wages and other damages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) Any and all damages provided pursuant to 29 U.S.C. § 2617(a)(1), including, but not limited to, lost wages, salary, employment benefits, back pay, interest, liquidated damages, and any and all other available pecuniary damages;

b) pre-judgment and post-judgment interest;

c) attorney's fees and costs;

d) reinstatement, if feasible; and

e) any other relief that this Court deems just.

## COUNT III – TITLE VII
### 42 U.S.C. § 2000e *et seq.*

71. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 70 hereinabove.

72. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

73. By committing the aforementioned acts, Defendant has discriminated against Plaintiff on the basis of her race and on the basis of her sex in violation of 42 U.S.C. § 2000e *et seq.*

74. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT IV – 42 U.S.C. § 1981

75. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 74 hereinabove.

76. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

77. By committing the aforementioned acts, and specifically by discriminating against Plaintiff on the basis of her race, Defendant has violated 42 U.S.C. § 1981.

78. As a direct result of the discriminatory and wrongful conduct of the Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT V – THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## 29 U.S.C. § 621 *et seq.*

79. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 78 hereinabove.

80. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

81. By committing the aforementioned acts, and specifically by discriminating against Plaintiff on the basis of her age, Defendant has violated 29 U.S.C. § 621 *et seq.*

82. As a direct result of the discriminatory and wrongful conduct of the Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) lost wages, salary, employment benefits;

b) back pay, including interest;

c) reinstatement, if feasible, or in the alternative, front pay;

d) liquidated damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

SCHMITTINGER AND RODRIGUEZ, P.A.

By: _____
Gary E. Junge, Esquire
Bar I.D. # 6169
414 South State Street
P.O. Box 497
Dover, Delaware 19903-0497
(302) 674-0140
Attorney for Plaintiff

Dated: December 22, 2021